# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

**ALLISON LUMPKIN,** *and*
**MALLORY BOWLIN** *Individually,*
*and on behalf of herself and others*
*similarly situated as a class,*

Plaintiffs,

        v.

**CASH EXPRESS, LLC,**
*a Tennessee Limited Liability Company*, and
**GARRY MCNABB,** *Individually*

Defendants.

**No. 2:23-cv-00003**

**Chief Judge Waverly D. Crenshaw, Jr.**
**Magistrate Judge Alistair E. Newbern**

**FLSA Opt-In Collective Action**
**JURY DEMANDED**

## JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND TO DISMISS ACTION WITH PREJUDICE

### INTRODUCTION

Plaintiffs, Allison Lumpkin and Mallory Bowlin ("Plaintiffs") and Defendants, Cash Express, LLC and Garry McNabb ("Defendants"), have entered into a Settlement Agreement ("Settlement" or "Settlement Agreement") that resolves the claims alleged in this matter. The Settlement Agreement was reached after extensive investigation, arm's length settlement negotiations, and multiple in-person settlement conferences; is fair and reasonable; and warrants this Court's approval.

Pursuant to the Settlement Agreement, Defendants will pay up to $562,500.00 to settle this matter, including payment of the Court approved Attorney's Fees and Costs, Court approved Settlement Administration expenses, individual payments pursuant to Section 9.3 of the Settlement Agreement, among other expenses. Settlement Agreement, ¶ 8.0. Of this amount $261,950.00

1

will be set aside for payment of the individual claim of any eligible employee who consents to join the settlement. As set forth in the Settlement Agreement, Named Plaintiffs and Collective Members are eligible to receive a portion of the Total Maximum Settlement Amount in accordance with the Settlement's terms in exchange for their release of their federal and state law wage claims that accrued to them against Defendants during the Covered Period. Each Settlement Collective Member will receive a Notice of Settlement (attached to the Settlement Agreement as Exhibit B) which will advise them of their rights and a consent to join (attached to the Settlement Agreement as Exhibit C) so that they can join the case/settlement and claim their allocated portion of the Maximum Settlement Amount. Settlement Collective Members who do not elect to opt-in to the settlement will not release their claims or be bound by the Settlement.

The Parties separately negotiated the Fees and Cost Settlement Amount in which, subject to the Court's approval, attorneys' fees in the total amount of $225,000, plus Plaintiffs' counsel's out-of-pocket costs up to the amount of $10,000.00 and settlement administration costs of $25,000 will be paid to Plaintiffs' counsel. The Fees and Cost Settlement Amount and Administration Amount are separate from the Maximum Settlement Amount and will be paid by Defendants in addition to the Maximum Settlement Amount. The Settlement Agreement should be approved by the Court as a fair and reasonable resolution of a *bona fide* dispute.

Finally, the named-Plaintiffs will receive a $15,000 general release payment, in exchange for signing a general release in favor of Defendants.

## STATEMENT OF FACTS

Plaintiffs and Collective Members are current and former hourly paid nonexempt employees who performed compensable travel duties by which they were only reimbursed for mileage. Plaintiffs allege that Defendants violated the FLSA, by *inter alia*, failing to pay for all

hours worked including compensable travel time. Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation.

On January 20, 2023, Plaintiffs, through counsel, filed this lawsuit against Defendants on behalf of themselves and a collective of similarly situated individuals. (ECF No.1). Thereafter, Plaintiffs amended their complaint and invited Defendants to explore the potential for a resolution of those alleged claims. (ECF No. 17).

Thereafter, the Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims, which continued for several months. This process consisted of extensive ADR-related discovery and two (2) full-day in-person mediation sessions, overseen by experienced wage and hour mediator, Allen Blair. The in-person mediation sessions took place on February 21, 2024 and March 7, 2024, in Memphis, Tennessee. Throughout this ADR process, the Parties, by and through their counsel, engaged in numerous telephonic discussions, as well as written correspondence and negotiations.

In order to appropriately inform the ADR process, the Parties conducted substantial discovery. Specifically, the Parties exchanged significant data and information in connection with the threatened claims, travel reimbursement data, payroll data, and timecard data, which Plaintiffs' Counsel reviewed and analyzed extensively. This process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arm's-length settlement negotiations. The Parties' investigations, substantial discovery, and extensive arm's-length negotiations with the aid of Mr. Blair resulted in this settlement and the corresponding Settlement Agreement proposed herein.

As a result of the ADR process (including discovery), mediation, and settlement negotiations, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein. Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, the Parties have considered: (a) the facts developed during the investigation and mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs and the Collective Members to settle their claims against Defendants and the Released Parties.

The Settlement offers significant advantages over the continued prosecution of this case: Plaintiffs and the Collective Members will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to their liability. The Parties have spent considerable time analyzing the data and negotiating and drafting the Settlement Agreement, which ensures that all Collective Members are provided with notice of the Settlement Agreement and its terms.

The Settlement Agreement provides, *inter alia*, as follows:

- The "Settlement Collective" means Plaintiffs and all hourly paid nonexempt employees who were paid mileage for employment related travel at any time between June 6, 2021 and the date the Court enters an order granting this Motion. Each member of the Settlement Collective will be fully advised of this settlement with the Notice of Settlement of Collective Action Lawsuit ("Notice") attached as Exhibit B to the Settlement Agreement.

- Pursuant to the Settlement Agreement, Defendants will pay up to $562,500.00 to settle this matter. Defendants will separately pay the employer's share of payroll taxes. This amount shall be distributed in accordance with the following objective formula:

    ○ The minimum amount of $25.00 (the "Minimum Payment") per Settlement Collective Member will be deducted from the Total Maximum Settlement

4

Amount prior to the determination of estimated *pro rata* individual settlement shares and allocated to each to each Settlement Collective Member so that each Settlement Collective Member receives at least $25.00 in exchange for their release in this Settlement Agreement.

o   In addition to the $25.00 payment, Settlement Collective Members shall receive a pro rata portion of the "Net Settlement Amount" (Total Maximum Settlement Amount less the Minimum Payments) as follows: For each mile reimbursed during the Covered Period, each eligible Settlement Collective Member shall receive one minute of time at an hourly rate of $13.10. Any eligible Settlement Collective Members who worked two or fewer weeks shall be assigned zero settlement shares and shall only receive the Minimum Payment.

To calculate each eligible Settlement Collective Member's proportionate share of the Net Settlement Amount:

(1)   Add all miles reimbursed to all Settlement Collective Members;

(2)   Divide the number of miles reimbursed for each eligible Settlement Collective Member by 60 to obtain each eligible Settlement Collective Member's amount of time;

(3)   Multiply each eligible Settlement Collective Member's time as set forth above by $13.10 to derive the Settlement Collective Member's "Individual Share of the Net Settlement Amount." Then, add the Individual Share of the Net Settlement Amount to the Minimum Payment to determine each Settlement Collective Member's "Individual Settlement Amount."

- In order to receive their allocated portion of the settlement proceeds all putative opt-in plaintiffs, with the exception of Plaintiffs and those opt-in plaintiffs who previously opted in to the case by filing their consents to join, must timely return a signed consent to join, which will then be filed with the Court.

- The Settlement Awards shall be checks that contain a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check the Settlement Collective Member agrees to opt in to this collective action, defined by its caption and release the Released Claims as follows:

By depositing or cashing this check, I am opting into and affirm my release of Cash Express, LLC, Garry McNabb and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Lumpkin, et al v. Cash Express, LLC, et al.*, No. 2:23-cv-00003.  I affirm that I will not sue or assert any of the Released Claims, including FLSA claims, against any of the Released Parties.

5

- Plaintiffs' Counsel shall receive the Fees and Costs Settlement Amount and Administration Amount, in compensation for all work performed to date as well as all work remaining to be performed in the Action.

*See* Settlement Agreement, attached hereto as **EXHIBIT 1**.

Counsel for the Parties concur that the Settlement is fair and reasonable under the circumstances, especially in light of the obstacles to facilitation of notice and/or potential decertification and the bona fide issues regarding damages (if any) suffered by Plaintiffs. Thus, Plaintiffs now seek approval of the Parties' Settlement Agreement, so that they can commence with the distribution of the Notices of FLSA Settlement to each Potential Opt-in Plaintiff.

## MEMORANDUM OF LAW

The Parties have stipulated and agreed that, for settlement purposes only, facilitation of notice of the Settlement Collective as an FLSA collective under 29 U.S.C. § 216(b) is appropriate. Settlement approval is warranted where, as here, the settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the Act," is fair and reasonable, and is the product of serious, informed, arm's-length negotiations. *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353-54 & n.8 (11th Cir. 1982); *see also Bennett v. Behring*, 737 F.2d 982, 987 n.9 (11th Cir. 1984). The Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

- the amount of time potential plaintiffs spent performing compensable travel time;
- whether Defendants' timekeeping methods accurately tracked all time worked for purposes of calculating overtime;
- the appropriate rate at which overtime should have been paid;
- whether Defendants would be able to meet their burden of demonstrating good faith, such that they would avoid the imposition of liquidated damages;
- whether Plaintiffs could maintain a collective action and facilitate notice to potential plaintiffs; and
- whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

Accordingly, a *bona fide* dispute over FLSA provisions exists. Ultimately, the Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue.[1]

The settlement reached and corresponding Settlement Agreement represent an excellent result for the Settlement Collective Members. There is no indicia of fraud or collusion with respect to this proposed Settlement, which was reached after arm's-length negotiations, including a mediation session conducted by an experienced wage and hour mediator, and after (1) the exchange of substantial data and analyses and (2) numerous meet and confers regarding potential exposure. The Settlement is based on extensive and appropriate investigation, including detailed analyses of the data provided. Ultimately, represented by experienced counsel, and with assistance of an experienced mediator, the Parties have agreed to this Settlement as a fair and reasonable resolution of this case.

In accordance with the factual and legal principles outlined above, the Parties respectfully request the Court approve the Parties' negotiated settlement of Plaintiffs' FLSA claims. The instant adversarial action involves disputed factual and legal issues that could completely or partially bar the Plaintiffs and the collective action members' claims. Ultimately, the Parties recognized the

---

[1] Indeed, a trial on the merits would involve significant risks for Settlement Collective members given the disputed serious questions of law and fact in the case, including - as in any FLSA case - the risk that the Settlement Collective members would not succeed in obtaining and then maintaining a collective through trial. The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this excellent settlement. *See Cotter v. Checkers Drive-In Rests*., Inc., No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *21 (M.D. Fla. Aug. 25, 2021) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain."); *Lunsford v. Woodforest Nat'l Bank,* No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *21 (N.D. Ga. 2014) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993) (second alteration in original)).

significant risks in proceeding to trial with this collective action lawsuit. The Parties agree that the terms of settlement reached reflect a reasonable "give-and-take" on the major issues in dispute.

### I. <u>Legal Standard</u>.

The legislative history of the FLSA "shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). This legislation arose out of the "recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Id*. The FLSA is "a statute designed to protect individual rights", is "remedial and humanitarian in purpose, and must not be interpreted or applied in a narrow, grudging manner." *Herman v. Fabri–Centers of Am., Inc*., 308 F.3d 580, 585–86 (6th Cir.2002) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)) (internal quotation marks omitted). Thus, there are two ways in which FLSA collective action settlements can obtain binding releases to waive their FLSA claims. First, § 216(c) of the FLSA allows collective action settlements and waivers of claims under the FLSA if the payment of unpaid wages by the employer is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); and *Lynn's Foods*, *supra*. Second, § 216(b) of the FLSA allows a Plaintiff in a collective action to settle and waive claims under the FLSA when a court reviews and approves a collective action settlement in a private action for back wages. *See* 29 U.S.C. § 216(b); s*ee also Sculte, Inc. v. Gandi*, 328 U.S. 108 (1946). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," where "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them

from bringing their own suits at a later date." *Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468, at \*2 (S.D.N.Y. July 11, 2011).

In reviewing a settlement of a private FLSA claim, the Court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.,* 679 F.2d at 1355; *see also Doe 1-2 v. Deja Vu Servs., Inc., No. 2:16-CV-10877, 2017 WL 2629101, at \*8 (E.D. Mich. June 19, 2017), aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc., 925 F.3d 886 (6th Cir. 2019); Bartlow v. Grand Crowne Resorts of Pigeon Forge,* No. 11-400, 2012 WL 6707008, at \*l (E.D. Tenn. Dec. 26, 2012); *Simmons v. Mathis Tire & Auto Serv., Inc.,* No. 13-2875, 2015 WL 5008220, at \*1 (W.D. Tenn. Aug. 20, 2015). A settlement that "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute" meets this test of resolving a "bona fide dispute." *Lynn's Food Stores,* 679 F.2d at 1354; *accord Alvarez v. BI Inc.,* 2020 WL 1694294, at \*4 (E.D. Pa. Apr. 6, 2020).

## II. The Settlement Agreement is a Fair and Reasonable Resolution of Bona Fide Disputed Claims.

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Williams v. K&K Assisted Living LLC*, 2016 WL 319596, at \*1 (E.D. Mich. Jan. 27, 2016) (internal quotation marks and citations omitted). The Sixth Circuit has provided guidance on the factors a court may assess in determining whether a proposed class settlement is fair, reasonable, and adequate, which include: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public

9

interest. *See, e.g., Belmont v. Homes of Opportunity, Inc*., 2018 WL 6571145, at *1 (E.D. Mich. Dec. 13, 2018); *Byers v. Care Transp., Inc*., 2017 U.S. Dist. LEXIS 25233, at *2 (E.D. Mich. Feb. 23, 2017). "If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Arrington*, No. 10-10975 (internal quotation marks omitted) (quoting *Lynn's Food Stores Inc.*, 679 F.2d at 1354).

A *bona fide* dispute exists in this case. Defendants asserted, and continue to assert, that they had reasonable grounds to believe they were in full compliance with the FLSA and acted in good faith and not in violation of the FLSA at all times relevant to this action. *See Selk v. Pioneers Mem'l Healthcare Dist.,* 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("A bona fide dispute exists when there are legitimate questions about 'the existence and extent of [d]efendant's FLSA liability.") (further quotation omitted).

Here, there is substantial dispute between the Parties about whether overtime was properly paid for all hours worked, whether the alleged unpaid travel time hours would be overtime hours, the amount, if any of such overtime hours. The settlement reached between the Parties is fair, reasonable and adequate. The settlement resolves disputed claims between adverse Parties and concludes contentious litigation that would otherwise result in further costs and protracted litigation given the complexity and stakes at issue in this matter with no guarantee of a favorable outcome. For that reason, the settlement should be approved.

### A. The Settlement is Fair and Adequate Based on the Facts of the Case

Here, there are hundreds of potential settlement collective members. Each potential collective settlement member will be eligible to receive a minimum payment of $25.00 regardless of the number of qualifying miles. The settlement formula takes into account an amount of time

on a per mile basis, since the alleged off the clock time was travel time or drive time, by which the only records that exist are mileage reimbursement records.

Notwithstanding the gaps in the data and testimony, the settlement will compensate members of the putative settlement collective in an amount that equates with approximately how long it took members of the putative settlement collective to drive or travel the qualifying miles in each qualifying work week. Given the realistic estimate of an average speed of sixty (60) miles per hour, provides for approximately all of the unpaid travel/drive time and thus overtime wages asserted as owed by the putative collective over a three-year period. For a wage and hour case, essentially arising from allegations of off-the-clock work, such a result is excellent.

**B. The *Belmont* Factors Favor Approval.**

Furthermore, all of the *Belmont* factors favor approval, as discussed below.

**1. No Risk of Fraud or Collusion.**

Given the vigorously contested litigation, no argument can be made that fraud or collusion exists. The Parties are represented by experienced counsel, and the settlement was reached through hotly contested arms-length negotiations in mediation before a nationally respected wage and hour mediator in two (2) full-day mediation sessions.

**2. The Complexity, Expense and Likely Duration of the Litigation.**

The factual and legal complexities of this collective action are considerable. *See supra*. Various disputed issues remained before trial. *Id*. If the matter was not resolved through a settlement, a jury would otherwise need to determine compensability of travel time and thus whether the Plaintiffs worked off-the-clock, the number of off-the-clock hours the Plaintiffs worked, and whether any violation of the FLSA was willful for purposes of determining whether a 2-year or 3-year statute of limitations applies to the Plaintiffs' claims. Likewise, the Court would

have been required to decide whether Defendants are entitled to a good faith affirmative defense to avoid the imposition of otherwise mandatory liquidated damages, as well as how to calculate Plaintiffs' alleged damages, if any. Defendants also vehemently opposed proceeding with this matter on a representative/collective basis, and likely would have appealed the sufficiency of any representative proof at trial, regardless of outcome. Additionally, the Parties have expended significant costs in the completion of this matter, and would have been required to expend additional significant costs if this matter was not resolved through a settlement. Therefore, the complexity, expense, and length of continued litigation weighs in favor of this settlement.

### 3. Amount of Discovery Engaged in by the Parties.

"To ensure that the class plaintiffs have had access to the information needed to adequately assess their case and the desirability of the proposed settlement, it is necessary to consider the stage of the proceedings and the amount of discovery taken to date." *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Here, the Parties exchanged in extensive discovery prior to reaching settlement. *See supra.* The Parties have engaged in a sufficient amount of discovery in this matter.

### 4. The Likelihood of Success on the Merits.

The Plaintiffs' likelihood of ultimate success on the merits along with the amount of damages to be awarded was uncertain. Defendants presented various defenses that provide a complete and/or partial bar to recovery. Defendants also contended that Plaintiffs grossly inflated their estimated off-the-clock hours worked, and believe the jury would reject their claims or award them a nominal amount of damages, if any, for their alleged off-the-clock hours worked. Defendants also asserted that the Plaintiffs were not entitled to liquidated damages or a three-year statute of limitations, because any violations of the FLSA were committed in "good faith" and

were non-willful. Since the claims in this matter stem from alleged off-the-clock violations, the pay and time records do not identify the alleged unpaid hours worked. Moreover, the settlement evaluation provided supra is based on the Plaintiffs' estimated unpaid hours worked, derived from greatly varied accounts of the amount of off-the-clock hours worked, and not a defense estimate. Simply put, the settlement represents a fair and reasonable recovery for the Plaintiffs.

### 5. The Opinion of Plaintiff's Counsel and the Collective Action Representatives.

This Court must consider the opinion of the experienced trial counselors who have evaluated the strengths of the case. *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (internal citations and quotation marks omitted) ("When considering a proposed settlement, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs'"). Counsel for all Parties possess extensive experience in FLSA collective action litigation, and hold the opinion that settlement is in the best interest of all Parties involved, including the Opt-In Plaintiffs. The collective action Representatives likewise hold the opinion that the settlement is in the best interest of the Plaintiffs.

### 6. The Reaction of Absent Class Members.

"The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, at *31, 2008 WL 3981461 (N.D. Ohio Aug. 22, 2008) (citation omitted). As this is a collective action under the FLSA, and not a Rule 23 Class action, there are no "absent" class members. Indeed, the FLSA provides that no party may be bound by a settlement unless they "opt in'' to the case. See 29 U.S.C. §216(b). Here, there are no "absent" class members and, thus, this factor weighs in favor of approving the settlement.

### 7. The Public Interest.

There is a "strong public presumption in favor of settlement." *Pavlov v. Cont'l Cas. Co.*, 2009 WL 10689011, at *10 (N.D. Ohio Oct. 7, 2009) (internal citations omitted). Indeed, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotation marks and citations omitted) ("…there is a strong public interest in encouraging settlement of 27 complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources"). Here, the Parties' voluntary settlement agreement serves the public interest while preserving judicial resources.

### 8. Application of All Seven Factors Demonstrates the Settlement is Fair and Reasonable.

In this case, all seven factors point to a determination that the proposed settlement is "fair and reasonable". Accordingly, the Parties ask the Court to approve the settlement according to the terms of the Settlement Agreement and enter an Order preliminarily approving same and allowing notice to issue to the collective.

### III. Plaintiffs' Attorneys' Fees and Costs Are Fair and Reasonable and Should Be Approved.

In addition to the amounts allocated to the Plaintiffs under the settlement, the Court also evaluates the reasonableness of the attorneys' fees payable to Plaintiffs' counsel under the settlement. Here, the amounts are fair and reasonable in light of the facts of this case and thus the Court is due to approve them as well. In an FLSA case, an award for reasonable attorney fees to a

prevailing plaintiff is mandatory. *See* 29 U.S.C. § 216(b); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The Sixth Circuit in *Fegley* summarized the important policy objectives behind the FLSA attorney fee provision, and states:

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

*Id*. at 1134 – 35 (internal citations and quotations omitted).

The mandatory fee award should also be reasonable. "The FLSA provides that, if the court enters judgment in favor of a plaintiff on a claim of unpaid overtime in violation of the Act, 28 '[t]he court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Rembert v. A Plus Home Health Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (quoting 29 U.S.C. § 216(b)). "A reasonable fee should be adequate to attract competent counsel but avoid providing a windfall for attorneys." *Smyers v. Ohio Mulch Supply Inc*., No. 21-3008, 2021 WL 2774665, at *2 (6th Cir. July 1, 2021) citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

In an FLSA collective action, "[t]he Court has discretion to select one of two methods to calculate reasonable attorney's fees in a common fund case: either by using a percentage-of-the-fund calculation or a lodestar multiplier." *Carr v. Bob Evans Farms, Inc.,* 2018 WL 7508650, at *3 (N.D. Ohio July 27, 2018) citing *Rawlings v. Prudential–Bache Props.*, 9 F.3d 513, 516-17 (6th Cir.1993) (emphasis added); *see also Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 F.App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *See, e.g., Rawling*s, 9 F.3d at 515–16. A court can independently validate the reasonableness of attorney fees under either

method, and it need not apply both. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 297 (6th Cir. 2016) (Observing in a consumer class action that the Sixth Circuit has "repeatedly upheld a district court's determination that a fee award is reasonable based solely on a lodestar analysis" without conducting a percentage-of-the-fund cross-check). The Sixth Circuit has instructed the district courts to "select the more appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them. . ." *Rawlings*, 9 F.3d at 516.

**A. The percentage of the fund approach is the "most appropriate" method for determining reasonable attorneys' fees in FLSA common fund collective action settlements, like here.**

In answering the Sixth Circuit's instructions to "select the more appropriate method for calculating attorney's fees", *Rawlings*, 9 F.3d at 516, district courts within the Sixth Circuit have consistently opined that the "the percentage approach is the most appropriate method for determining reasonable attorneys' fees in wage and hour cases…" *Hebert*, 2019 WL 4574509, at *4 (emphasis added) (internal citations and quotation marks omitted); *see also Fitzgerald v. P.L. Mktg., Inc*., 2020 WL 3621250, at *10 (W.D. Tenn. July 2, 2020) ("The 'percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund').") (emphasis added) (internal citations and quotation marks omitted); *Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019); *Kimber Baldwin Designs, LLC v. Silv Commc'n, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014); *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010).

As the Sixth Circuit explained in *Rawlings*: The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of

16

plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation. 9 F.3d at 516. To that end, district courts within the Sixth Circuit criticize the use of the lodestar method under circumstances like those at bar. For example, in *Salinas v. U.S. Xpress Enterprises, Inc.* another district court in Tennessee explained:

> Even in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains disfavored because "regardless [of] how a total settlement structure is formally structured ... every dollar given to class counsel means one less dollar for the class.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. 30 Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of the "economic reality" of such arrangement); *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming settlement, overruling objectors, and holding that the district court properly used a percentage-of-the-fund calculation in computing fees despite the fact that the underlying statute provided for attorney's fees to the prevailing party). 2018 WL 1477127, at *9 (E.D. Tenn. Mar. 8, 2018), report and recommendation adopted, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *See also Rawlings*, 9 F.3d at 516-517 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources. *Shalala*, 1 F.3d at 1269–70; Task Force Report at 250. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement. *Shalala*, 1 F.3d at 1268–69; Task Force Report at 247–48."). Similarly, in *In re Cardinal Health Inc. Sec. Litigations*, the court reasoned:

17

The lodestar method has been rightly criticized for generating avoidable hours, discouraging early settlement, and burdening district judges with the tedious task of auditing time records. *Goldberger*, 209 F.3d at 48–49. Because attorneys are paid based on the amount of hours they work, there is an incentive to over-litigate or "churn" cases. *Microstrategy*, 172 F.Supp.2d at 787. Rather than reward attorneys for achieving the best outcome for the class, or for doing so quickly and efficiently, the lodestar instead rewards attorneys for the number of hours that they work, regardless of whether such hours provide the maximum benefit to the class. In most industries, organizations strive for the best output while devoting the fewest number of resources possible. Imprisoned by the billable hour, the lodestar encourages just the opposite. Then, to protect the class's fund from unnecessary attorney padding, the Court must endure time-consuming parsing of reams of attorney time sheets and hindsight recalculations to determine the proper amount of work and charges. *AOL*, 2006 U.S. Dist. LEXIS 78101, at *26. 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007).

In line with this well-established authority, Plaintiffs request the Court adopt the use of the percentage-of-the-fund method to assess the reasonableness of the attorneys' fee award provided in the settlement agreement here.

### B. Attorneys' fees in an amount of 40% of the common fund is a reasonable attorney's fee award in light of the work performed and the results achieved.

District courts within the Sixth Circuit hold that "fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created." *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006); *In re Telectronics Pacing Systems*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) (same). One-third of the common fund is the average attorneys' fee award in FLSA collective action common fund

settlements. *See Satterly v. Airstream, Inc*., 2020 WL 6536342, at *10 (S.D. Ohio Sept. 25, 2020) (finding that 1/3 of the common fund is the "norm" in wage and hour cases while acknowledging that "attorney fee awards 'typically range from 20 to 50 percent of the common fund'") citing *Arledge v. Domino's Pizza, Inc*., 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018).

Here, pursuant to the Settlement Agreement, Plaintiffs' counsel respectfully requests an award of $225,000 for their attorney's fees, which amounts to 40% of the common fund. This amount is percent provided for by Plaintiffs' retainer agreement. Defendants do not oppose Plaintiffs' request for fees consistent with applicable law. Furthermore, the fees provided for by the Parties' settlement agreement are significantly less than what other district courts within the Sixth Circuit have repeatedly approved in cases where counsel performed significantly less work and/or obtained a significantly less-notable result for their clients. For example, in *Kritzer*, the Southern District of Ohio approved an award "equal [to] nearly 52 percent of the total recovery" in an FLSA collective action that was "vigorously contested on law and fact" for the two years it was litigated. *Id*. at *10; *see also id*. at *9 (Recognizing that the "risk of non-recovery was particularly significant here" and noting that "some courts consider 'the risk of non-recovery' as 'the most important factor in fee determination'".), citing *In re Cardinal Health Inc. Sec. Litig*., 528 F.Supp.2d 752, 765–66 (S.D.Ohio 2007)).

This is far from an issue of first impression. This Court and courts within this Circuit and around the country have repeatedly recognized 40% or more of the gross settlement as reasonable fees in FLSA common fund collective actions in which counsel performed "significant work." *See, e.g., Mclain et. al. v. First Acceptance Corp*., No. 3-17-cv-00408 [D.E. 57] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (Order approving attorneys' fees and costs approximating 66% of the total FLSA settlement); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-cv-1412 [D.E.

56] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (Order approving attorneys' fees and costs approximating 50% of the total FLSA settlement); *Salinas,* 2018 WL 1477127, at *11, report and recommendation adopted, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (approving 40% of the common fund in FLSA Collective Action settlement); *Brittmon v. Upreach LLC*, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) (same); *Hoffman v. Poulsen Pizza LLC*, 2017 WL 25386 at *9 (D. Kan. Jan. 3, 2017) ("Historically, our court has approved fee awards in FLSA cases ranging from "four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars."); *Legros v. Mud Control Equip., Co.,* 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (awarding Plaintiff's counsel 40% of gross settlement for fees and costs in FLSA collective action as fair and reasonable where "a significant time and effort has been expended in the three years this case has been pending"); *Matthews v. Priority Energy Servs., LLC,* 2018 WL 1939327, at *1 (W.D. Tex. April 20, 2018) (Approving 40% of the gross settlement for fees in FLSA collective action where "experienced counsel for the collective class has worked on this matter for nearly three years of litigation"); *Sarabia v. Spitzer Indus., Inc.,* 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (recognizing that a 40% contingency fee in an FLSA case was "in line with that approved in other FLSA cases") (citing *Matthews*, 2018 WL 1939327, at *2; *Mesa v. AG-Mart Produce, Inc.*, 2010 WL 4909591 (M.D. Fla. Nov. 19, 2010) (approving attorneys' fee of $350,000 out of $750,000 minimum settlement involving an FLSA collective action, or 46.6%); *Mabry v. Hildebrandt*, 2015 WL 5025810 at*3 (E.D. Pa. Aug. 24, 2015) (approving 40% contingency fee in FLSA action and finding that, "[i]n this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20 to 45%."); *Flerlage v. US Foods, Inc.,* 2020 WL 6318662, at *4 (D. Kan. Oct. 28, 2020) (approving a percentage of the fund of 45.4%, inclusive of fees and costs in an FLSA settlement);

*Enegren v. KC Lodge Ventures LLC,* 2019 WL 5102177, at \*12 (D. Kan. Oct. 11, 2019) ("The court agrees that a 40 percent fee is fair and reasonable in this context" in FLSA collective action); *Daniels v. Prod. Mgmt. Indus., LLC*, 2018 WL 1954352 at \*4 (W.D. La. Apr. 20, 2018) (acknowledging that "contingency fee arrangements in this legal community are generally in excess of 33%" and finding that 40% of the gross settlement amount for attorneys' fees and costs as "fair and reasonable" in FLSA collective action); *Heffernan Bryant v. Un. Furniture Indus., Inc.,* 2017 WL 639320, at \*5 (N.D. Miss. Feb. 16, 2017) (approving a request for 40% in fees in FLSA collective action while acknowledging that attorneys' fees in percentage of the fund common fund class cases "commonly fall between a lower 20% and an upper end of 50%"); *Wolfe v. Anchor Drilling Fluids USA Inc.,* 2015 WL 12778393, at \*3 (S.D. Tex. Dec. 7, 2015) (approving a 40% fee in FLSA collective action); *Quintanilla v. A & R Demolition Inc.,* 2008 WL 9410399, at \*10 (S.D. Tex. May 7, 2008) (40% fees in FLSA collective action); *Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, at \*21, 2011 U.S. Dist. LEXIS 38663, at \*59 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund."); *Lyons v. Gerhard's Inc.,* 2015 WL 4378514, at \*1 (E.D.Pa.2015) (44% for fees approved as being "on the higher side, but it is not so high as to be unreasonable" in FLSA case); *In re Telectronics Pacing Sys., Inc.,* 137 F.Supp.2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 822 (3d Cir. 1995) (noting that a district court had determined that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund). Additionally, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001 (quoting *Behrens v. Wometco Ent., Inc.,* 118 F.R.D. 534, 548

(S.D. Fla. 1988). Indeed, "[l]awyers who are to be 35 compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981) (overruled on other grounds); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

As Judge King from the Southern District of Florida has observed: Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. . . . This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing. *Behrens supra.*

Here, there are very few lawyers that would be willing or able to take on a FLSA collective action lawsuit of this magnitude, much less law firms able to finance such litigation. Nonetheless, Plaintiffs' counsel relentlessly fought for their clients' rights, and ultimately obtained a favorable outcome. In line with this well-established authority, Plaintiffs respectfully requests the Court approve their request for attorneys' fees.

**IV.**     **Plaintiffs' Counsel is Entitled to Reimbursement for all Expenses Reasonably Incurred.**

The FLSA provides that, if the court enters judgment in favor of a plaintiff on a claim of unpaid overtime in violation of the Act, '[t]he court in such action shall ... allow a reasonable

22

attorney's fee to be paid by the defendant, and costs of the action.'" *Rembert v. A Plus Home Health Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (quoting 29 U.S.C. § 216(b)). As this Court has previously held, "[t]he prevailing party in an FLSA case is entitled to all reasonable costs of litigation." *Monroe v. FTS USA, LLC*, 2020 WL 13227389, at *9 (W.D. Tenn. Oct. 13, 2020) (Fowlkes, J.), aff'd, 17 F.4th 664 (6th Cir. 2021), cert. denied, 142 S. Ct. 1232 (2022), citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.2d 955, 969 (10th Cir. 2002) (recognizing that recoverable costs under the FLSA "can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920," such as reasonable out-of-pocket expenses) (citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988), cert. denied, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989) (holding that the FLSA authorizes an award of costs as part of a "reasonable attorney's fee," which would otherwise not be authorized under Rule 54 or 28 U.S.C. § 1920)).16 "To the extent that costs are not recoverable in accord with § 1920, a prevailing party in a Fair Labor Standards Act ("FLSA") case may still recover under 29 U.S.C. § 216(b)." *Monroe v. FTS USA, LLC*, 2014 WL 4472706, at *2 (W.D. Tenn. Sept. 10, 2014) (Fowlkes, J.), citing 29 U.S.C. § 216(b).

Aside from agreeing to take on this multi-state collective action on a contingency basis, Plaintiffs' Counsel' firm also agreed to advance all costs incurred in connection with this action. It is worth noting that, because any law firm has finite resources, the acceptance of this case precluded Plaintiff's Counsel's firm from accepting some other actions as well as investing such monies paid in costs here in other matters. Here, Plaintiffs' Counsel requests reimbursement in the amount of $10,000 for hard costs and expenses (e.g. printing and copying, travel, filing fee, legal research) plus $25,000 for the cost of administration of the settlement.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant this Motion and (1) enter the accompanying Proposed Order; (2) dismiss this case with prejudice; and (3) retain jurisdiction to enforce the Settlement.

**Dated** this, the 9th day of September, 2024

**JOINTLY SUBMITTED:**

*/s/ J. Russ Bryant*
J. Russ Bryant (TN Bar No. 033830)
Gordon E. Jackson (TN Bar No. 008323)
**JACKSON SHIELDS YEISER HOLT
OWEN & BRYANT**
262 German Oak Drive
Memphis, TN 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
Email: *rbryant@jsyc.com*
        *gjackson@jsyc.com*

*Counsel for Plaintiffs*

-&-

*/s/ W. Kerby Bowling*
W. Kerby Bowling (TN Bar No. 009363)
David J. Cocke (TN Bar No. 007988)
**EVANS-PETREE PC**
1715 Aaron Brenner Drive
Memphis, TN 38120
Telephone: (901) 525-6781
Email: *kbowling@evanspetree.com*
        *dcocke@evanspetree.com*

*Counsel for Defendants*

24

## CERTIFICATE OF SERVICE

I, Russ Bryant, hereby certify that on this, the 9th day of September, 2024, I electronically filed the foregoing ***Joint Motion for Approval of Collective Action Settlement and to Dismiss Action with Prejudice*** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

W. Kerby Bowling (TN Bar No. 009363)
David J. Cocke (TN Bar No. 007988)
**EVANS-PETREE PC**
1715 Aaron Brenner Drive
Memphis, TN 38120
Telephone: (901) 525-6781
Email: *kbowling@evanspetree.com*
      *dcocke@evanspetree.com*

*/s/J. Russ Bryant*

J. Russ Bryant